UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARRY D MITCHELL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-2221 |
| | § | |
| BRUCE D BAGGETT, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff Garry D. Mitchell filed a complaint under 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment rights. On January 14, 2014, defendants moved for summary judgment. For the reasons stated below, defendants' motion is Granted.

### I.     Background

At all times relevant to this case, Mitchell was an inmate in the Wynne Unit of the Texas Department of Criminal Justice ("TDCJ"). The defendants are TDCJ Captain Bruce Baggett, Sergeant Roderick Smith, and Corrections Officers Caleb M. Brumley and Matthew L. Chatman. Mitchell contends that he was in the dayroom with other inmates on March 2, 2013 when he heard a male voice yell "sit your ass down." Mitchell looked around to see who yelled when Baggett and a female officer passed by in the hallway outside the dayroom. Mitchell saw Baggett and the officer through windows between the dayroom and hallway.

Mitchell alleges that Baggett looked at him, and then had a corrections officer pull him out of the dayroom and into the hallway. Mitchell and Baggett had an exchange of words, and Baggett then told Mitchell to put his hands on the wall and spread his legs. Baggett then tightly handcuffed Mitchell's hands behind his back while making threatening

statements.  Mitchell alleges that Baggett pushed his left arm high up on his back, causing the handcuffs to pinch and causing a stinging pain in Mitchell's wrist.  Baggett then pushed Mitchell down the hall to the Captain's office.

A Field Sergeant (presumably defendant Cook) then took Mitchell to the infirmary where he was examined.  While at the infirmary, Mitchell heard the Sergeant speaking to someone on his walkie talkie.  The person on the other end, who Mitchell assumes was Baggett, told the Sergeant to have all of Mitchell's property packed up and searched for contraband.  The Sergeant then told defendants Chatman and Brumley to pack up Mitchell's property and write up any contraband they found.

The sergeant then took a statement from Mitchell.  When Mitchell tried to give a detailed account of the day's events, the sergeant told him that he only had three lines on which to write the statement and told Mitchell to keep his statement brief.

Mitchell was subsequently charged with, and found guilty of, disciplinary violations for failing to obey an order and possessing contraband.  His property was seized and he lost good time credit and privileges.  *See* Defs. Exh. A at 1, 14.

## II.    Analysis

### A.    Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Once the movant presents evidence demonstrating entitlement to summary judgment, the nonmovant must present specific facts showing that

there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### B. <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment bars suits for money damages by individuals against states, including state agencies and departments.  It also bars suit for money damages against state officials in their official capacities.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State Schl. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984). Defendants argue that they are entitled to dismissal under the Eleventh Amendment.

Mitchell's response to the summary judgment motion clarifies that any claims for damages are asserted against the defendants only in their individual capacities.  His official capacity claims seek only injunctive relief.  Therefore, the defendants are not entitled to dismissal under the Eleventh Amendment.

### C. <u>Excessive Force</u>

Mitchell argues that Baggett's alleged actions in handcuffing him tightly and jerking his arm violated Mitchell's Eighth Amendment rights.  The Eighth Amendment bars the use of excessive force.  However,

> [t]o establish an excessive use of force claim, a plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001) (citations and internal quotation marks omitted). Further, the "injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Id.*

*Lockett v. City of New Orleans*, 607 F.3d 992, 999 (5th Cir. 2010). In *Lockett*, the Fifth Circuit held that "'handcuffing too tightly, without more, does not amount to excessive force.'" *Id.* (quoting *Glenn*, 242 F.3d at 214).

Mitchell states that his injuries were more than *de minimis*, noting that medical personnel ordered x-rays on his wrist, and prescribed Naproxen for pain. He cites *Hudson v. McMillian*, 503 U.S. 1 (1992) for the proposition that the force used must serve some legitimate penological purpose.

In *Hudson*, the evidence showed that prison guards handcuffed and shackled Hudson, then "punched Hudson in the mouth, eyes, chest, and stomach while [one of the guards] held the inmate in place and kicked and punched him from behind." *Hudson*, 503 U.S. at 4. "As a result of this episode, Hudson suffered minor bruises and swelling of his face, mouth, and lip. The blows also loosened Hudson's teeth and cracked his partial dental plate rendering it unusable for several months." *Id.* In determining whether prison officials' use of force violates the Eighth Amendment, a court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.

This case is more closely analogous to the force found not to be excessive in *Lockett* and *Glenn* than to the constitutionally excessive force used in *Hudson*. Mitchell alleges that the defendants deliberately made the handcuffs too tight. The only injury he identifies, however, is some lingering pain requiring the use of Naproxen. In that sense, this case is virtually indistinguishable from *Glenn*, in which the officers handcuffed the plaintiff so tightly that her wrist became swollen. *See Glenn*, 242 F.3d at 214. Unlike the officials in

*Hudson*, there is no allegation that the defendants deliberately beat Mitchell while he was restrained and posed no threat to them.

In *Hudson*, the Supreme Court noted that

> corrections officers must balance the need to maintain or restore discipline "through force against the risk of injury to inmates. [A] situation[] may require prison officials to act quickly and decisively. [However,] '[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. " [*Whitley v. Albers*,] 475 U.S., [312,] 321-322, 106 S.Ct., at 1085 [(1986)].

*Hudson*, 503 U.S. at 6.

Considering the nature of Mitchell's injuries, which are not meaningfully distinguishable from those suffered by the plaintiff in *Glenn*, Mitchell suffered only *de minimis* injuries. Moreover, viewing the defendants' actions under the deferential standard articulated in *Whitley*, it cannot be said that the defendants acted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Therefore, the defendants are entitled to summary judgment on Mitchell's excessive force claim.

### D. Search and Seizure

Defendants argue that their actions in packing up Mitchell's cell and taking his property to the security office for a search did not violate his constitutional rights because a prisoner has no reasonable expectation of privacy in his cell. To the extent that Mitchell asserts a Fourth Amendment claim for the defendants' actions in removing and searching his property, the defendants are unquestionably correct. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("we hold that society is not prepared to recognize as legitimate any subjective

expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"). To the extent that Mitchell asserts a due process claim based on deprivation of his property, such claim is addressed below.

### E. Due Process

Mitchell contends that he was deprived of his property without due process of law. He further contends that his disciplinary proceedings for disobeying an order and possession of contraband did not comport with the requirements of due process.

#### 1. Deprivation of Property

While Mitchell concedes that the majority of the items seized by the defendants were contraband, he contends that several items were not. These include legal papers belonging to another inmate, a radio attached to a contraband antenna, and some items that the defendants characterized as contraband but Mitchell argues were not.

Mitchell's allegations are that the defendants unlawfully confiscated his property. Under the Supreme Court's holdings in *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*, 468 U.S. 517 (1984), "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the state fails to provide an adequate postdeprivation remedy." *Zinermon v. Burch*, 494 U.S. 113, 115 (1990).

Defendants point out that Texas law provides a remedy for the tort of conversion. *See* TEX. GOV'T CODE ANN. art. 501.007. Mitchell does not dispute that a state court action for

conversion is available to him. He conclusorily asserts, however, that the maximum of $500 recoverable in such an action is inadequate to compensate him for his lost property.

The items Mitchell claims were improperly taken from him include personal photographs, a radio, headphones, and shower shoes. There is no evidence to suggest that the items have a monetary value greater than $500, or that the state court remedy is inadequate. Mitchell presents no evidence in support of his argument that the state tort remedy is inadequate. Therefore, under the *Parratt/Hudson* doctrine, Mitchell may not bring this due process claim under 42 U.S.C. § 1983.

### 2. Disciplinary Hearing

While an inmate retains a right to due process in a prison disciplinary hearing, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To comport with the requirements of due process, a prison disciplinary hearing must provide the prisoner with: 1) written notice, at least 24 hours in advance, of the alleged violation; 2) a written statement of the evidence relied on and the reasons for disciplinary action; and 3) the opportunity to call witnesses and present evidence. *Id.*, at 563-66. A finding of guilty in a disciplinary hearing must be supported by "some evidence." *See*, *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-56 (1985).

The record shows that Mitchell was charged with possession of contraband and with disobeying an order. *See* Defs. Exh. A at 1, 14. Mitchell pled guilty to the possession of contraband charge, *id.*, at 1, but not guilty to the charge of disobeying an order, *id.*, at 14.

Mitchell received written notice of the charges and waived his right to 24 hours notice. *See* Defs. Exh. A at 1, 14. He was found guilty on both charges, and unsuccessfully appealed the guilty findings through the grievance process. *See* Defs. Exh. B at 52-56.

The record thus clearly establishes that Mitchell received constitutionally adequate notice. He does not contend that he was deprived of an opportunity to present evidence on his own behalf, or that the defendants did not provide a written statement of the evidence relied on and the reasons for disciplinary action. He does contend, however, that the evidence was inadequate to support the guilty findings.

While Mitchell disputes that the radio, legal papers, photographs, headphones, and shower shoes were contraband, he admits that he was in possession of other contraband. There is therefore evidence, including Mitchell's guilty plea, to support the finding of guilt on that charge.

Mitchell contends that he did not sit down when ordered to do so because he did not know who gave the order. He admits, however, that he heard the order and did not comply. There is therefore at least some evidence in the record to support the guilty finding on this charge. In sum, the disciplinary proceedings complied with the due process requirements set out in *Wolff* and *Hill*. Defendants are entitled to summary judgment on this claim.

### F. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED.

### III. Order

It is ORDERED that:

1. The defendants' motion for summary judgment (Dkt. No. 27) is GRANTED; and

2. The complaint (Dkt. No.1) is DISMISSED WITH PREJUDICE.

SIGNED on this 2nd day of July, 2014.

_____
Kenneth M. Hoyt
United States District Judge